## PECK v. HUNTER. (No. 776-4759.)

Commission of Appeals of Texas, Section B. March 30, 1927.

1. **Partnership** ⊜⟶328(3)—**Finding that counterclaim for amount of judgment paid by defendant was incident to cause of action for partnership accounting held warranted (Rev. St. 1925, arts. 2015, 2017).**

In suit for settlement and accounting of partnership affairs, trial court's finding that counterclaim, under Rev. St. 1925, art. 2015, for amount paid by defendant to satisfy judgment against plaintiff on note indorsed by defendant for borrowed money contributed to partnership by plaintiff, was founded on cause of action arising out of, incident to, and connected with, plaintiff's cause of action, as required by article 2017, *held* sustained by sufficient testimony and contravened by no substantial testimony.

2. **Appeal and error** ⊜⟶1010(1)—**Appellate court is bound by district court's finding, sustained by testimony, that counterclaim was incident to plaintiff's cause of action (Rev. St. 1925, art. 2017).**

Court of Civil Appeals is bound by district court's finding of fact under pleadings and evidence that counterclaim was founded on cause of action arising out of, incident to, and connected with, plaintiff's cause, as required by Rev. St. 1925, art. 2017, where record shows testimony sufficient to sustain it, and there is no substantial testimony contravening it.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by J. L. Hunter against A. P. Peck and others, in which named defendant filed a counterclaim. A judgment for plaintiff for the difference between the amounts due him and counterclaimant was affirmed, except as to the counterclaim, by the Court of Civil Appeals (289 S. W. 106), and counterclaimant brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

Turner, Culton & Gibson, of Amarillo, and Storey & Leak and O. T. Warlick, all of Vernon, for plaintiff in error.

Berry, Stokes & Killough, of Vernon, and E. R. Pedigo, of Austin, for defendant in error.

SHORT, J. The opinion of the Court of Civil Appeals in this case is reported in 289 S. W. 106.

This suit was filed in the district court of Wilbarger county by the defendant in error, J. L. Hunter, to compel a settlement and accounting of the partnership affairs between himself and his former partners, A. P. Peck and J. C. Hickernell; the partnership having been alleged to have been formed on or about October 1, 1920, under an agreement to purchase the property of the Bowers Oil Company, on which there were situated, among other things, two or more flowing oil wells with necessary and proper tools and machinery for their operation, the consideration being $75,000, of which $25,000 was to be paid in cash and the balance out of production of oil from the property within 90 days. Hunter contributed of this cash $12,500, and the partnership composed of A. P. Peck and J. C. Hickernell contributed $15,000. It is also alleged that a certain percentage of the property should be divided among the partners and another not necessary to mention, and that each one of these three partners should bear the losses in equal proportion. The allegation is made that no settlement of any nature or character of the partnership business had ever been made, though the greater part of the partnership property had been disposed of at a loss, by reason of which the original defendants, the plaintiffs in error here, had in their possession, of the capital stock belonging to him (the original plaintiff, the defendant in error here), a certain sum of money belonging to him upon a due and just accounting.

The prayer asked judgment that an accounting be taken of all the dealings and transactions involved in the partnership, and that Peck and Hickernell, and each of them, be required to contribute to said partnership the full sum of $25,000, after deducting whatever amount to be determined that they had paid into the partnership, and that, upon contribution and accounting, the said Peck and Hickernell, and each of them, be adjudged to pay the original plaintiff what shall appear upon such accounting to be due from them; he being ready and willing and offering to account to his former partners for his just portion of the losses incurred by reason of the purchase, operation, and resale of said property.

J. C. Hickernell did not file any answer. A. P. Peck filed a voluminous one, no part of which is before us except that wherein he pleads as an offset to Hunter's demand an amount hereinafter stated, growing out of the transaction wherein Hunter, at the time he made his first act of contribution to the partnership amounting to $10,000, borrowed $3,500 from a certain bank, giving his note with Peck's indorsement in return for the money, which $3,500 was delivered to Peck, together with $6,500 which Hunter had already in his possession. Peck asserted in his pleading that Hunter had failed to pay part of this note, and that the bank had recovered a judgment for the balance against Hunter as principal and himself as surety, which balance Peck was compelled to pay, and thereby Hunter became liable under an implied promise to repay this money.

Upon a trial before the judge, no jury having been demanded, Hunter was found to be due from the assets of the partnership in

the hands of his partners Hickernell and Peck, $6,557.40, but that this amount should be offset by the amount of the bank's judgment which Peck had been compelled to pay for Hunter, amounting to $2,097.83, and, judgment having been rendered in accordance with this finding, appeals were duly prosecuted to the Court of Civil Appeals, where the judgment of the district court was in all things affirmed, except that part allowing Peck the offset; the Court of Civil Appeals holding he was not entitled to offset Hunter's claim against the partnership with this claim. From this judgment Peck has successfully prosecuted to the Supreme Court a writ of error.

The writ was granted by the Supreme Court on the first proposition under the second assignment of error which reads as follows:

"The offset urged by defendant Peck grew out of, was connected with, and incident to the partnership of Peck and Hickernell and Hunter, which resulted in this suit, and therefore the claim of Peck was properly allowed as an offset against the claim asserted by plaintiff."

Peck's plea of offset with reference to this claim is in the following language:

"Further answering this, defendant says that the claim or judgment upon which he seeks to recover against plaintiff by his cross-action set up in his second amended answer grows out of and is a part of the entire transaction for which plaintiff is now suing for an accounting and for recovery against this defendant, in that at the time of the original purchase of the said Bowers Oil Company property, the said Hunter put up $10,000 and the said Peck and the said Hickernell put up $7,500 each; but, in order for the said Hunter to put up said $10,000 which went into the original purchase of said property, it became necessary, or at least he thought so, for him to borrow $3,500 from the Waggoner National Bank of Vernon, Tex., which said $3,500 so borrowed was put into said project by the said Hunter in making his $10,000 aforesaid, and which said $3,500, together with the other money advanced by the said Hunter, as well as the said Peck and the said Hickernell, all went into said project; that the said Hunter executed his promissory note to said bank for said sum of $3,500 aforesaid, and at the said Hunter's request this defendant indorsed the same, and said proceeds of said note as already stated was used by plaintiff in the original $10,000, and a part of same to the extent of the said $3,500; that plaintiff thereafter made certain payments upon said note, and that afterwards, on, to wit, the 8th day of January, A. D. 1924, the said Waggoner National Bank recovered judgment on the balance due on said note against the plaintiff J. L. Hunter, and this defendant, jointly and severally, for the sum of $1,884.83 and costs of suit; that said judgment recited and found that this defendant was a surety on the note and obligation sued on and was secondarily liable thereon to said bank, and provided that execution first issue against the plaintiff herein, and that execution was thereafter duly issued against the plaintiff herein to Travis county, Tex., and Wil-

barger counties, and said executions were duly returned 'No property found'; that thereafter execution was issued against this defendant, and he was forced and compelled to pay the amount of said judgment to said bank, and that by reason thereof the plaintiff J. L. Hunter herein became liable and bound to pay to this defendant the said sum of $1,884.83 and costs of suit, and account to him herein, with legal interest at the rate of 10 per cent. per annum from the 18th day of February, A. D. 1924; that the last-named date was the day and date on which this defendant was compelled to pay and did pay said sum of money to the said Waggoner National Bank; that said note was payable at Vernon, Tex., and said court had jurisdiction over the parties in said matter; that this defendant has often made demand of the said Hunter to pay this defendant said sum of money, but the defendant has wholly failed and refused to pay the same to this defendant's damages in the sum of $2,400."

[1] While Hunter interposed, in his reply to this pleading, a plea of privilege and another of misjoinder of parties and of causes of action, in addition thereto he only pleaded a general denial. And, in view of the fact that the determination of the only question necessary to a decision of the case is dependent upon the testimony introduced by the parties on this subject, we deem it necessary to state this testimony from the record. Hunter testified:

"I put up $6,500, and had to borrow $3,500 from the bank, which made $10,000, and I turned that money over to Mr. Peck."

Hunter also introduced a letter dated January 9, 1924, to himself from Peck, of which the following is a part:

"I am inclosing herein final statement of the Bowers lease deal for your information, also want to advise that the Waggoner National Bank took judgment yesterday on your note which I indorsed. I tried every way that I knew of to get the Waggoner National note paid by Peck & Hickernell, as I figured Hickernell and myself were going to be indebted to you in the final settlement, although I have not figured it up closely, but could get no interest shown in it by any one but myself."

Peck, in his testimony, among other things, testified:

"At the time of the original agreement, it was agreed what sums of money Col. Hunter, Mr. Hickernell, and myself were to pay in. That agreement came up this way. The Bowers Oil Company had to have $25,000 cash. Mr. Hickernell and myself had a little over $15,000 in the Waggoner National Bank and Col. Hunter had $6,500 in cash that he could put in. In order to raise the money, I agreed to indorse a note at the Waggoner National Bank for $3,500, and Col. Hunter went down there and made the note, and I indorsed it, and we were then given credit at the Waggoner National Bank; that is, Peck & Hickernell were given credit for the $3,500, the proceeds of the note, and he gave us his check for $6,500. I think the $10,000 went into the account of Peck & Hickernell at

the Waggoner National Bank. * * * In order for Col. Hunter to get the $10,000 which he paid down on the original purchase price of the lease, I went to the bank and helped him arrange to get the money. I don't recall whether I went to the bank, or spoke to Mr. Piper personally, but we got the money by giving a note to the Waggoner National Bank for $3,500, and Col. Hunter signed the note, and I signed it as an indorser, and that money went in as a part of his $10,000. At that time Mr. Murray was keeping the books, and his notation on his entry shows, cash $6,500; note, $3,500. That is the credit we got from the Waggoner National Bank, and Mr. Hunter was given credit on the books for $10,000. That $3,500 note was renewed from time to time, and small payments made on it by Col. Hunter, until finally the Waggoner National Bank took judgment on it, and I paid the balance off. I know how much that judgment was for; I have the check here with which it was paid off. That judgment bore interest at the rate of 10 per cent. I had to pay the judgment off; I was an indorser on the note, and the bank took judgment against me and the bank both. The check now exhibited to me is the check I paid that judgment off with. * * * Col. Hunter never paid that back to me."

Article 2015 of the Revised Statutes of 1925 is as follows:

"Whenever any suit is brought for the recovery of any debt due by judgment, bond, bill or otherwise, the defendant shall be permitted to plead therein any counterclaim he may have against the plaintiff, subject to such limitations as may be prescribed by law. The plea setting up such counterclaim shall state distinctly the nature and the several items thereof, and shall conform to the ordinary rules of pleading."

Article 2017, among other things, provides that—

"The defendant may plead in set-off any counterclaim founded on a cause of action arising out of or incident to, or connected with, the plaintiff's cause of action."

[2] It has been seen that the district court under the pleadings and the evidence introduced in support thereof found as a fact that the counterclaim pleaded by Peck for himself and the partnership was founded on a cause of action arising out of, incident to, and connected with, the plaintiff's cause of action, by which finding of fact the Court of Civil Appeals is bound, where the record shows testimony sufficient to sustain it, and where there is an absence of any substantial testimony contravening it, and, as we have seen from an inspection of the statement of facts, there is ample testimony to sustain the finding of the trial court and no substantial testimony contravening it. Such being the situation, we sustain the second assignment of error presented by the plaintiff in error and the proposition above quoted made in support of it.

The conclusion we have reached renders it unnecessary to discuss the other assignments, and, as the statute unequivocally confers the right upon Peck to plead in offset the counterclaim founded on a cause of action arising out of, incident to, and connected with, the plaintiff's cause of action, citation of authorities is unnecessary.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

CURETON, C. J. Under the facts found by the Court of Civil Appeals, Peck's offset was properly allowed by the district court. Fowler Commission Co. v. Land & Co. (Tex. Com. App.) 248 S. W. 314; 34 Cyc. 738. The judgment of the Court of Civil Appeals is therefore reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.